UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TUSHAR (A-Number: 245-134-616),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No. 1:26-cv-5606-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Tushar, a citizen of India, was ordered removed to Uganda at a December 12, 2025, immigration court hearing where he appeared out of custody. ICE took him into custody on December 23, 2025, to execute the removal order. Petitioner has been detained since then. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his prolonged detention without a significant likelihood of removal in the reasonably foreseeable future violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner is a citizen of India who entered the United Sates without inspection on August 19, 2023, and was detained by immigration authorities. *Tushar v. Warden, California City Det. Facility*, No. 1:26-cv-4011-TLN-JDP, 2026 WL 1747448, at *1 (E.D. Cal. June 17, 2026), *report*

*and recommendation adopted*, 2026 WL 1950554 (E.D. Cal. July 6, 2026) (hereinafter "*Tushar I*")[1]. Respondent released petitioner from custody on his own recognizance and placed petitioner into removal proceedings on August 23, 2023. *Id.* On December 15, 2023, petitioner filed an application for asylum. *Id.*

Petitioner appeared in immigration court out of custody on December 12, 2025. *Tushar II*, ECF No. 9-1 at 2. At that hearing, the Department of Homeland Security ("DHS") moved to pretermit petitioner's removal case, invoking the Safe Third County bar to humanitarian relief. *Id*. The immigration judge granted that motion and ordered petitioner removed to Uganda. *Id.* at 8. That removal order was administratively final on January 12, 2026. *Tushar I*, 2026 WL 1747448, at *2.

On December 23, 2025, ICE took petitioner into custody.[2] *Tushar I*, ECF No. 7. Once the removal order was administratively final, ICE contacted DHS Refugee and International Operations ("RIO") on January 19, 2026, to arrange for petitioner's removal to Uganda. *Id.*, ECF No. 7 at 3. The ICE deportation officer contacted RIO again on January 30 and February 3, 2026, regarding the removal. *Id.* On February 3, 2026, RIO told the ICE deportation officer that DHS and the Department of State were "still working with the Uganda government in Kampala to operationalize Petitioner's case." *Id.*

On April 16, 2026, the ICE deportation officer determined that petitioner's removal was "under review" by RIO. *Id.* On July 16, July 20, and August 3, 2026, the deportation officer contacted RIO requesting an update regarding petitioner's removal. *Tushar II,* ECF No. 9-2 at 2. Per the deportation officer, the last update from ROI was that "there were no scheduled charter[ flights] . . . due to Ebola virus concerns and implemented travel restrictions." *Id.* "RIO HQ will contact ICE/ERO when a flight becomes available." *Id.* Petitioner has remained detained throughout this time.

---

[1] The instant case will be referred to as *Tushar II*.

[2] The ICE deportation officer assigned to petitioner's case provided a declaration in *Tushar I*, ECF No. 7, that he updated and supplemented in the current matter, *see Tushar II*, ECF No. 9-2.

## Procedural History

On May 26, 2026, petitioner filed his first petition for writ of habeas corpus seeking his release from immigration custody. *Tushar I*, ECF No. 1. Respondent opposed the petition and argued that petitioner's detention was authorized under 8 U.S.C. § 1231(a)(6), which allows respondent to hold a noncitizen for removal beyond the 90-day period provided in 8 U.S.C. § 1231(a)(2). *Id.*, ECF No. 6 at 2.

Petitioner's final order of removal to Uganda was issued on December 12, 2025; accordingly, I determined that the presumptively reasonable six-month period set forth in *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), concluded on July 12, 2026. *Tushar I*, 2026 WL 1747448, at *2. Thus, when I considered petitioner's first petition, his detention for purpose of removal was still presumptively reasonable. *Id*. To ensure that respondent could remove petitioner if possible, I recommended that the petition be denied without prejudice and that the no-transfer order be lifted. *Id.* That recommendation was adopted on July 6, 2026. *Tushar I*, ECF No. 12. In its order, the court noted, "If Respondents do not act swiftly to lawfully effect Petitioner's removal to Uganda, Petitioner may file a subsequent Petition for Writ of Habeas Corpus to challenge his prolonged detention." *Id.* at 1.

Petitioner has still not been removed. *See* ICE Detainee Locator at https://locator.ice.gov/odls/#/search (last checked Aug. 20, 2026). Petitioner filed a new petition for writ of habeas corpus on July 20, 2026, challenging his prolonged detention. ECF No. 1. Respondent filed a motion to dismiss. ECF No. 9.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his prolonged detention pending removal violates due process. ECF No. 1. Respondent argues that petitioner's detention is authorized under 8 U.S.C. § 1231(a)(6), which allows respondent to hold a noncitizen for removal beyond the 90-day period provided in 8 U.S.C. § 1231(a)(1). ECF No. 9 at 1. Respondent contends that "although the removal period is beyond the six-month [presumptively reasonable] window" under *Zadvydas*, "detention is still reasonable." *Id.* at 2.

In *Zadvydas*, the Supreme Court considered prolonged immigration detention after a final order of removal. 533 U.S. 678 (2001). The Court held that although the government has statutory authority to detain non-citizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*, 533 U.S. at 699. The Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months after the final order of removal. On this basis, I recommended denial of petitioner's first habeas petition, which he filed prior to the expiration of that six-month period.

However, petitioner has now been detained for eight months under section 1231 and must only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to shift the burden to the government, which "must respond with evidence sufficient to rebut that showing." *Id.* at 701. Petitioner has met this burden.[3] In his first habeas petition, petitioner averred that he is "okay with" removal to Uganda and has been waiting for his removal. *Tushar I*, ECF No. 1 at 7. He indicated that "there has not been any travel documents issued, no removal date or any positive correspondence with the country of [his] removal." *Id.* at 6 (spelling corrected). He stated that his removal "is not showing any sign of

---

[3] I take judicial notice of petitioner's first petition for writ of habeas corpus. *See* Fed. R. Evid. 201.

happening any time soon," and that "no progress has been made toward [his] removal to the third-country which proves that [his] removal to a third-country is significantly unlikely to happen in the reasonably foreseeable future." *Id.* at 7 (spelling corrected). In petitioner's current filing, he states that there "have not been any travel documents issued, no removal date, or any positive correspondence with the country of [his] removal." *Tushar II*, ECF No. 1 at 6.

Given the eight months that petitioner has been waiting for removal to Uganda, his cooperation with the process, and the lack of any progress on his removal, he has provided a good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The government's evidence supports this finding. ICE arrested petitioner in December 2025 before his removal order was administratively final and without a plan for his removal. *See Tushar I*, ECF No. 7 at 2-3. After the removal order was administratively final, ICE contacted RIO regarding petitioner's removal to Uganda pursuant to the cooperation agreement between Uganda and the United States. *Id.* at 3. ICE recontacted RIO regarding petitioner's removal to Uganda on January 30 and February 3, 2026. *Id.* ICE determined that petitioner's removal was "under review" by RIO on April 16, 2026. *Id.* On July 16, July 20, and August 3, 2026, the deportation officer contacted RIO requesting an update regarding petitioner's removal. *Tushar II,* ECF No. 9-2 at 2. As of August 3, 2026, "there were no scheduled charter[ flights] . . . due to Ebola virus concerns and implemented travel restrictions." *Id.* Respondent has not set forth any reason to believe that petitioner has a significant likelihood of being removed in the reasonably foreseeable future. Rather, ICE has been told that "RIO HQ will contact ICE/ERO when a flight becomes available." *Id.*

Accordingly, respondent has not provided any "evidence sufficient to rebut that showing" under *Zadvydas*. *See* 533 U.S. at 701. In fact, respondent's evidence confirms that there is no significant likelihood of petitioner's removal to Uganda in the reasonably foreseeable future. Courts have repeatedly found that similar evidence was insufficient to rebut the unreasonableness of prolonged detention under *Zadvydas*. *See Andreasyan v. Gonzales*, 446 F. Supp. 2d 1186, 1189 (W.D. Wash. 2006) (evidence that the petitioner's case was "still under review and pending a decision" insufficient to rebut *Zadvydas* claim); *Islam v. Kane*, No. 11-cv-515- PGR-LOA, 2011

WL 4374226, at *3 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) (repeated statements from foreign consulate that the travel document request was pending insufficient); *Khader v. Holder*, 843 F. Supp. 2d 1202, 1208 (N.D. Ala. 2011) (pending travel document request insufficient, where "[t]he government offers nothing to suggest when an answer might be forthcoming or why there is reason to believe that he will not be denied travel documents"); *Mohamed v. Ashcroft*, No. 01-cv-1747-P, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (pending travel document request insufficient).

As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful. *See Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR, 2026 WL 1398910, *2 (E.D. Cal. May 18, 2026); *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent's motion to dismiss, ECF No. 9, be DENIED.

3. Respondent be ordered to immediately release petitioner (A-Number: 245-134-616) from its custody subject to the previously-imposed conditions of release, if any.

4. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless there is a significant likelihood that it will remove petitioner in the reasonably foreseeable future, and it follows all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 21, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE